*Vega*, 69 P.R.R. 376 (1948); *cf. People* v. *Ruiz*, 79 P.R.R. 902 (1957); *State* v. *Kicak*, 168 N.E.2d 768 (Ohio 1959). See, also, annotations in 158 A.L.R. 1062 (1945); 74 A.L.R. 757 (1931); and 33 A.L.R. 550 (1924).[8]

The order issued by the Superior Court, Ponce Part, on June 27, 1957, will be reversed and the case remanded for further proceedings.

F.A.T.R., Petitioner and Appellant, *v.* DIRECTRESS OF ANA ROQUÉ DE DUPREY INDUSTRIAL SCHOOL FOR GIRLS, Defendant and Appellee.

No. 45. Decided November 16, 1961.

---

808

 

*Arturo Estrella, Assistant Attorney General,* and *Héctor R. Orlandi Gómez* for appellee. *Miguel Ramón Aguiló* for petitioner and appellant.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo and Mr. Justice Dávila.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

 The petitioner, F . . . A . . . T . . . R . . . , was born on September 1, 1941. When she was barely 14 years of age, she contracted marriage [1] on October 17, 1955, which was dissolved by judgment of February 6, 1957.

On February 19, 1956, a complaint was filed against the said minor in the Superior Court, Juvenile Part, alleging that she committed the following offense: "showed no respect for her parents, frequented prostitution places, the former alleging (the minor's parents) that she has pro-

---

[1] Subdivision 3 of § 70 of the Civil Code (31 L.P.R.A. § 232) includes women under 16 years of age among the persons incapacitated to contract marriage. However, a minor over 14 and under 16 years of age who has been seduced may contract marriage with the previous consent of her parents or tutor, and if they refuse it, with the consent of the part of the superior court of the place where she resides. In any event, a marriage contracted by a woman 16 years of age, insofar as it is subject to subsequent ratification either by the acts of the parents or by lack of prosecution by the minor's legal representatives, is merely voidable an not void *ab initio, Fernández* v. *García,* 75 P.R.R. 443 (1953).

From the social workers' reports attached to the minor's original record it appears that the latter was seduced by a young boy 17 years of age, and that at her father's behest the marriage was celebrated. They lived together several weeks and later the petitioner was abandoned and she returned to the paternal home.

miscuous relations with different men; two months ago she left the home (of the parents) and refused to return." On the following May 17 she was deemed incorrigible and was ordered to be committed in such institution as the Secretary of Health may designate, "in order to procure her rehabilitation, orientation, and welfare." She remained in the Industrial School for Girls until October 20 of that year, when she was permitted to return to her parents' home.

On September 6, 1957, a complaint was filed in the district court against minor F . . . A . . . T . . . R . . . , for violation of § 368 of the Penal Code—disturbance of the public peace. It was transferred to the Juvenile Part, which on April 24, 1958 found her guilty of the offense charged and, hence, a delinquent girl, and reordered her commitment in an appropriate institution. She was committed in the Industrial School for Girls.

In August 1958, a petition for habeas corpus [1a] was filed alleging, substantially, that the petitioner is illegally detained, since at the time the court ordered her commitment she had been emancipated by marriage,[2] and the Juvenile Court was therefore without jurisdiction. The petition was denied. In due time we issued a writ of review.

As correctly pointed out by the delegate of the Attorney General, we need not consider the effect of the emancipation

---

[1a] Regarding the propriety of the petition for habeas corpus for the purpose of passing on the legality of the detention of a minor who has been placed under the State's supervision, see McDaniel v. Shea, 278 F.2d 460 (D.C.D.C. 1960); Fritts v. Krugh, 92 N.W.2d 604 (Mich. 1958); Matter of the Application of Short, 328 P.2d 299 (Nev. 1958).

[2] When the court ordered the minor's detention for the second time, she was already divorced. Cf. Heirs of de Jesús v. Heirs of Castro, 62 P.R.R. 556 (1943), in which we said that the subsequent dissolution of the marriage during the minor's minority leaves untouched all the civil effects of emancipation upon her person.

as to the adjudication of an incorrigible child,[3] since at present the petitioning minor is detained by virtue of her having been declared to be a *delinquent* child, *i.e.*, for violating the penal provision in question.

The American courts have almost unanimously held that a marriage contracted by a minor under the jurisdiction of juvenile courts does not deprive the latter of jurisdiction. *State* v. *Cronin*, 56 So. 2d 242 (La. 1951) ; *Ex parte Berchfield*, 212 P.2d 145 (Okla. 1949) ; *Killian* v. *Burnham*, 130 P.2d 538 (Okla. 1942) ; *Williams* v. *State*, 219 S.W.2d 509 (Texas 1949) ; *State ex rel. Johnson* v. *Wiecking*, 274 N.W. 585 (Minn. 1937) ; and other cases cited in the annotation *Marriage as affecting jurisdiction of juvenile court over delinquent or dependent*, 14 A.L.R.2d 336 (1950) ; 2 Alexander, The Law of Arrest 2086, § 861 (1949). Against: *State* v. *De Marco*, 100 So. 574 (Ala. 1924). The basis and foundation of this position is the superior interest of the welfare and protection of the best interests of the minor, through the State's *parens patriæ*. The purpose of these statutes, which seek to establish a proper balance between the child's protection and the community's welfare, would be defeated. Truly, if the appellant's position were adopted, the only accomplishment would be to consider the child in similar cases as an adult for the purposes of the criminal prosecution, and to prosecute her as such in the courts having ordinary criminal jurisdiction. That result is not consistent with the legislative intent as we have interpreted it on repeated occasions. *People* v. *Montalvo*,

---

[3] Pursuant to § 2(*b*) of Act No. 97 of June 23, 1955 (Sess. Laws, p. 504), 34 L.P.R.A. § 2002, the Juvenile Court shall have authority over any child "who is deemed incorrigible and whose parents, caretakers, or teachers are unable to control him, thus jeopardizing his own or the community's welfare." It is urged that since the emancipation by marriage puts an end to the patria potestas, the emancipated person is not obligated to obey his parents, nor is he subject to their control, and that, therefore, the character of incorrigible can not be determined by reason of his disobedience of the latter's authority.

*ante,* p. 700; *Commonwealth in Interest of R.M.R., ante,* p. 235; *Mirabal* v. *Delgado, Warden,* 82 P.R.R. 573 (1961); Herman, *Scope and Purpose of Juvenile Court Jurisdiction,* 48 J. Crim. L. & C. 590 (1958); *Age and Related Jurisdictional Problems of the Juvenile Courts,* 36 Texas L. Rev. 323, 329 (1958); Note, 22 Minn. L. Rev. 285 (1937). It has been specifically emphasized as significant that the law reserves jurisdiction to the juvenile court until the child reaches majority, thereby manifesting a legislative intent to continue the State's guardianship function, irrespective of any change in the minor's status, *Chatwin* v. *Terry,* 153 P.2d 941 (Utah 1944). In this connection, it is well to recall that § 3 of Act No. 97 *supra,* 34 L.P.R.A. § 2003, expressly provides that "The Court shall retain its authority over any child covered by the provisions of this Act until he attains 21 years of age," unless there has been a waiver after the child attained the age of 16 years, or when after attaining the age of 18 years and being under the supervision of the court he commits another violation. As stated in *State* v. *Wiecking,* 274 N.W. 585 (Minn. 1937), no one would seriously maintain that the emancipation by marriage frees a minor from criminal responsibility, and, therefore, the special proceeding provided in juvenile courts, which in the interest of minors does not partake of a criminal nature, can not be disqualified by the same token. We therefore hold that the test in determining the power of the Juvenile Court to intervene with a minor is his age and not his civil status.[4]

The judgment rendered by the Superior Court, Ponce Part, on September 9, 1958, will be affirmed.

---

[4] In a wit of fine humor, it was said in *In re Dawkins,* 75 N.Y.S.2d 546, 549 (1947), that "Marriage does not as a matter of course emancipate. Under some conditions it does the opposite—(it enslaves)."