**In re CUSTODY OF A MINOR.**
**No. 13797.**

United States Court of Appeals
District of Columbia Circuit.

Argued June 18, 1957.

Decided Dec. 5, 1957.

Mr. Albert J. Ahern, Jr., Washington, D. C., with whom Mr. James J. Laughlin, Washington, D. C., was on the brief, for appellant.

Messrs. Richard W. Barton and Andrew G. Conlyn, Asst. Corp. Counsel for the District of Columbia, with whom Messrs. Chester H. Gray, Corp. Counsel, Milton D. Korman, Principal Asst. Corp. Counsel, and Hubert B. Pair, Asst. Corp. Counsel, were on the brief, for appellee.

Before EDGERTON, Chief Judge, and PRETTYMAN and BURGER, Circuit Judges.

BURGER, Circuit Judge.

The primary question on appeal from denial of habeas corpus is whether a minor has a right to counsel in a proceeding in which his parents are charged with inadequate care of the minor, and which charge if true would lead to removal of the minor from the custody of his parents.

In September 1951, the boy's mother (the father being in jail) was summoned to Juvenile Court to answer a charge that the boy was "without adequate parental care." At the time the boy was eight years old. Alleged thefts by the child were among the manifestations of the alleged lack of parental care.

The Juvenile Court Act of the District of Columbia applies to any person under the age of 18 "(1) Who has violated any law; or * * * (6) Who is homeless or without adequate parental support or care * * *." D.C.Code, §§ 11-906 (a) (1951). The Act provides for an informal hearing in "any case." It also provides that "If the court shall find that the child comes within the provisions of this chapter," it may place him on pro-

bation or commit him to the Board of Public Welfare, a training school, or a private institution, and "make such further disposition of the child as may be provided by law and as the court may deem to be best for the best interests of the child * * * ." D.C.Code, § 11–915 (1951).

After a hearing in the Juvenile Court in which the boy and his mother appeared, but without counsel, the Juvenile Court committed the boy to the Board of Public Welfare for a period of one year. He was recommitted in September 1952, and again in September 1953. In October 1953, an attorney entered an appearance in the case; the record does not show whether the attorney remained in the mother's or boy's service after January 1954, but he was given due notice of all subsequent commitment proceedings. There were subsequent recommitment hearings, and the boy has remained in the custody of the Board of Public Welfare continuously until the present time.[1]

In March 1957, a petition for habeas corpus (on which this appeal rests) was filed in the boy's name, alleging that he had originally been tried and committed on a charge of larceny, and that the commitment proceeding was void because the boy was not given the assistance of counsel as required by Shioutakon v. District of Columbia, 1956, 98 U.S.App.D.C. 371, 236 F.2d 666, nor had he waived this right. Had the boy been charged with a crime or confined as a consequence of such an act no doubt the Shioutakon case would control.

A hearing was held by the District Court, during which it appeared that the boy had been committed not on a charge of larceny, but because of inadequate parental care. The District Court held that the absence of counsel for the child in Juvenile Court in such a case was not a deprivation of rights and denied the writ.

In the District Court counsel moved to amend the grounds for the writ to conform to the record showing commitment for inadequate parental care. This was granted, and counsel, turning from the right to counsel argument, argued basic unfairness of the original proceeding, namely, that proper notice had been lacking. On appeal it is urged that due process was violated when the District Court denied the writ relying on the Juvenile Court records including reports of a social worker; that due process was denied in that neither the boy nor his mother received notice of the charges in the Juvenile Court; and that a child in a parental neglect proceeding has a right to counsel.

The record supports the District Court's finding that notice was duly given. The record does not support the contention that the District Court, in denying habeas corpus, did so in reliance on reports of social workers.

▮▮▮ With respect to the right to counsel for the child, as distinguished from counsel for the parent, it must be remembered this is not a criminal proceeding, nor indeed any kind of proceeding *against* the child. However, the proceeding as a whole is one which deals with important rights, the natural right of parents to rear and educate their own children in the parental home and the natural right of the child to be so reared. The law will protect the child from parental neglect even as against the natural parent where necessary. The parent may, of course, be represented by coun-

[1]. He has been living at "Junior Village." The annual report of the Department of Public Welfare for 1956 says that Junior Village "provides schools, recreation, social service, medical service, individual and group programs, food, clothing, and protection to the children * * * " and that "The children placed in the institution during the year required shelter care because of marital discord in the home, parents' financial distress and emotional instability, death of parents, hospitalization or incarceration of parents, eviction, desertion by parents, fugitive from parents, breakdowns in foster homes and other institutional placements, and parental cruelty to children."

sel.[2] The implementation of the child's rights is complicated by the factor of a possible or potential conflict of interest with the parents where the issue is whether the child is receiving proper parental care and where the parents appear and deny any neglect. An inarticulate infant cannot formulate or assert any position. Public policy and the rights of the child require that if the charge of neglect is true the child be removed from the control of the parents. The purpose of the proceeding is not punishment of the parent but protection of the child. If liberty can be said to be restrained that is only an incident of, not the purpose of the removal. Such as it is the restraint or deprivation of liberty is essentially the kind of restraint which parental authority normally places on a child. Care and protection of an infant, to which he has a right, require a measure of restraint upon his liberty, normally exercised by his parents. The public authority stepping into control is simply a substitute for natural parental authority.[3] A parent, for example, might place a child in a private home, an institution, or a private boarding school and in effect thus delegate a measure of the parental control to others.

In the present situation the court has by operation of law transferred parental authority and control from the natural parent to a public authority. This is not a trespass on but a vindication of the child's rights. We need not affirmatively decide whether the child is entitled to separate, independent court-appointed counsel in this case since the Juvenile Court process in effect makes the Director of Social Work of the Juvenile Court, who initiates the proceeding,[4] the child's counsel. The child is not denied but is affirmatively afforded not only legal counsel experienced in such matters but social and medical counsel as well. Conceivably a case could arise where conflict between the public welfare authority and the parents might lead the Juvenile Court to appoint separate counsel for the child but it is sufficient simply to acknowledge that possibility and leave treatment of that problem to the sound discretion of the Juvenile Court; the exercise of that discretion is always subject to review.

The judgment appealed from is

Affirmed.

EDGERTON, Chief Judge, dissents.

---

2. Cf. Arizona State Dept. of Pub. Welfare v. Barlow, 1956, 80 Ariz. 249, 296 P.2d 298.

3. The statute states the purpose of the law to be, "when such child is removed from his own family, to secure for him custody, care, and discipline as nearly as possible equivalent to that which should have been given by his parents." 52 Stat. 596 (1938), D.C. Code, § 11–902 (1951).

4. D.C.Code, § 11–908 (1951).