278 F.2d 460
 108 U.S.App.D.C. 15
 Carrie McDANIEL, as parent and next friend of Joyce
Ellerbee, a minor, Appellant,
v.
Gerald M. SHEA, Director of the Department of Public
Welfare, et al., Appellees.
Carrie McDANIEL, on behalf of Joyce Ellerbee, a minor, Appellant,
v.
Gerald M. SHEA, Director of the Department of Public
Welfare, Appellee.
 Nos. 15326, 15355.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued April 6, 1960.
Decided April 29, 1960.
 
 Mr. Timothy J. May (appointed by this court), for appellant.
 Mr. Richard W. Barton, Asst. Corp. Counsel for the District of Columbia, with whom Messrs. Chester H. Gray, Corp. Counsel, Milton D. Korman, Principal Asst. Corp. Counsel, and Hubert B. Pair, Asst. Corp. Counsel, were on the brief, for appellees.
 Before Mr. Justice REED, retired,* and WASHINGTON and DANAHER, Circuit Judges.
 DANAHER, Circuit Judge.
 
 
 1
 Appellant as parent and next friend of Joyce Ellerbee, aged 18, twice sought habeas corpus, alleging an illegal commitment of the minor by the Juvenile Court to an institutional maintained by the appellee Shea. The District Court dismissed both petitions, and after appeal, we consolidated the cases for brief and arugment.
 
 
 2
 The Juvenile Court in April, 1958 set for hearing a petition filed in behalf of the Woman's Bureau following a complaint that the girl was destitute of a suitable guardian. Counsel for the minor 'accepted the factual accuracy of the petition and submitted (her) to the Court's jurisdiction,' according to the docket entry of record.
 
 
 3
 Upon finding 'that the child comes within the provisions of' the Code, the Juvenile Court 'may by order duly entered proceed as follows:
 
 
 4
 '(1) Place the child on probation or under supervision in his own home or in the custody of a relative or other fit person, upon such terms as the court shall determine.'[1]
 
 
 5
 It is clear the Juvenile Court acted in April, 1958 under the foregoing paragraph, which authorized the court to take one of three courses, as will be noted. However, we have not been furnished with a copy of the court's April 8, 1958 order.
 
 
 6
 If the minor actually had then been placed on probation, there is nothing to show upon what terms probation proceeded. If the minor actually were then committed to the custody of her surviving parent, as the briefs before us seem to indicate, again the reocrd is silent as to terms. We have before us copies of certain docket entries by the Juvenile Court's clerk. 'On the basis of good report from Randolph School, respondent placed on probation,' as of '4-8-58.' The entry may have been erroneous, for the nect entry reads 'Judge Ketcham 7-17-59, Hearing on Probation.' But Judge Ketcham did not preside on July 17, 1959. The record clearly shows that Judge Fickling by designation had court on that day. What terms of probation were then found to have been violated or what deficiencies in parental supervision were conceived to contrary to the terms upon which custody had been reposed in the mother, we do not know. So far as we are advised, no finding was here made that the child's commitment to an institution was required in her own best interests and as necessary for the protection of society.[2]
 
 
 7
 Yet we are shown by the return to the District Court's show cause order that the Juvenile Court on July 17, 1959 'revoked the probation of Joyce Ellerbee.' If he child in the First place had merely been placed under supervision her own home, there would seem to in her no basis for a revocation of 'probation.'
 
 
 8
 Following the filing of the 1959 complaint, deprivation of liberty was certainly one of the intended consequences. The mother thought the child was no longer 'under the court.' She asked fro appointment of an attorney, but her request was rejected. The child asked for an attorney, bur expressed her belief she needed mental care.[3] The appellant stated she 'was wondering if the case could be continued, since she can't have a lawyer, and let her go on over to D.C. Genteral, and let the case come back in and have the report come back in.'[4]
 
 
 9
 We think the appellant needed a lawyer. Her status was, to say the least, in doubt, and she was in jeopardy. With her liberty in the balance, the assistance of counsel might well have furthered the best interests both of the child and of the authorities responsible in this delicate area of social welfare.
 
 
 10
 ' The 'right to be heard' when personal liberty is at stake requires the effective assistance of counsel in a juvenile court * * *.'[5] Of course, in the Shioutakon case we were speaking in the context of the Juvenile Court Act as applied to the hearing upon the results of which exercise of the court's powers is to be predicated. We have recognized that there are situations in the Juvenile course of proceedings in the Juvenile Court where the failure to appoint counsel will not result in deprivation of a right.[6] Even so, we expressed our confidence that the Juvenile Court will, subject to review, exercise a sound discretion as cases may arise.[7]
 
 
 11
 This is one of the cases where counsel became necessary. Denial of the ritht in the circumstances disclosed vitiated the 1959 proceedings complained of, and the District Court erred in dismissing the petition.
 
 
 12
 This is not to say that child is not still subject to the Juvenile Court's judrisdiction as found in April, 1958. We say only that proceeds under the that jurisdiction, if it exists, shall go forward with due regard to the appellant's right to counsel if further jeopardy of the minor's liberty is in prospect.
 
 
 13
 The order in No. 15,355 is reversel and that cause will be remanded to the District Court for discharge of the minor from the custody of appellee unless, within in ten days after the the entry of our judgment, further proceedings shall be initiated in the Juvenile Court 'at which she shall be represnted by counsel * * *.'[8] In view of the foregoing disposition of No. 15,355, the order appealed from in No. 15,326 is reversed and that cause is remanded with directions to dismiss the petition as moot.
 
 
 14
 No. 15,326 reversed and remanded with directions to dismiss petition as moot.
 
 
 15
 No. 15,355 reversed and remanded for further proceedings.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. 294(a)
 
 
 [1]
 52 Stat. 599, D.C.Code, 11-915 (1951). Other pertinent provisions of the same section authorize the Juvenile Court to:
 '(2) Commit the child to the Board of Public Welfare; or to the National Training School for Boys if in need of such care as is given in such schools; or to a qualified suitable private institution or agency willing and able to assume the education, care, and maintenance of such child without expense to the public. (As amended, Supp. VIII, 1960)
 '(3) Make such further disposition of the child as may be provided by law and as the court may deem to be best for the best interests of the chile: Provided, That nothing herein shall be construed as authorizing the removal of the child from the custody of his parents unless his welfare and the safety and protection of the public can not be adequately safequarded without such removal.
 'Whenever a child is committed by the court to custody other than that of its parent, the court may, after giving the parent a reasonable opportunity to be heard, adjudge that such parent shall pay in such manner as the court may direct such sum as will cover in whole or in part the support of such child, and if such parent shall willfully fail or refuse to pay such sum, he may be proceeded against as provided by law for cases of desertion or failure to provide subsistence.'
 
 
 [2]
 D.C.Code, 11-902 (1951), 52 Stat. 592, provides:
 'The purpose of this chapter is to secure for each child under its jurisdiction such care and guidance, preferably in his own home, as will serve the child's welfare and the best interests of the state; to conserve and strenthen the child's family ties whenever possible, removing him from the custody of his parents only when his welfare or the safety and protection of the public cannot be adequately safeguarded without such removal; and, when such child is removed from his own family, to secure for him custody, care, and discipline as nearly as possible equivalent to that which should have been given by his parents.'
 
 
 [3]
 D.C.Code, 11-926 (1951) makes provision for mental examination under court order
 
 
 [4]
 Compare In re Sippy, D.C.Mun.App.1953, 97 A.2d 455
 
 
 [5]
 Shioutakon v. District of Columbia, 1956, 98 U.S.App.D.C. 371, 374, 236 F.2d 666, 669, 60 A.L.R.2d 686
 
 
 [6]
 In reCustody of a Minor, 1957, 102 U.S.App.D.C. 94, 250 F.2d 419
 
 
 [7]
 Ibid
 
 
 [8]
 Dooling v. Overholser, 1957, 100 U.S.App.D.C. 247, 249, 243 F.2d 825, 827