Fred W. HERYFORD, Superintendent of the Wyoming Training School in Fremont County, Wyoming, Appellant,

v.

Charles W. PARKER, by and through Mabel A. Parker, his mother and next friend, Appellee.

No. 9724.

United States Court of Appeals
Tenth Circuit.

June 14, 1968.

Lawrence E. Johnson, Cheyenne, Wyo., and Jack Speight, Asst. Atty. Gen., Cheyenne, Wyo. (James E. Barrett, Cheyenne, Wyo., on the brief), for appellant.

Barkley Clark, Denver, Colo., for appellee.

Before MURRAH, Chief Judge, HILL and SETH, Circuit Judges.

MURRAH, Chief Judge.

This case was first before us on denial of a writ of habeas corpus sought by a mother as natural guardian in behalf of her mentally deficient son. The complaint was that the son was committed to the Wyoming State Training School for feeble-minded and epileptic under applicable Wyoming statutes without due process and particularly that he was denied his right to counsel and confrontation. We remanded to determine whether in view of In the Matter of the Application of Gault, etc., 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527, the patient had a constitutional right to counsel, and if so, whether his mother as natural guardian could and did waive it. 10 Cir., 379 F.2d 556. On remand the writ was granted and the State of Wyoming brings this appeal. We affirm.

The background and undisputed facts are that in 1946, when Charles Parker was about nine years of age, his mother requested the County Attorney to institute proceedings for commitment of Charles to the Wyoming Training School for feeble-minded and epileptic. The Wyoming Statutory procedure, i. e. see 9–444 thru 9–449, Wyo.Stat., provides that commitment of the feeble-minded and epileptic may be initiated by application of a relative or guardian or the prosecuting attorney on a form subscribed to under oath which states that the applicant verily believes that the proposed patient is a fit subject for care, treatment and training in the school and asks that the subject be brought before the District Court for examination and commitment; that if the subject be a minor without parent or guardian, the Judge shall appoint a guardian ad litem to represent him. The statute further provides that the application shall be accompanied by a written history of the proposed patient certified under oath by an examining physician in which he answers prescribed questions touching suitability of the subject for admission to the school. The court shall, upon receipt of the application and history, cause the proposed patient to be examined by a physician and psychologist separately, and each shall certify that the subject is fit for care, treatment and training at the school. Provision is made for a hearing on the application pursuant to notice before a judge of the District Court, and it becomes the duty of the County and Prosecuting Attorney to "appear and prosecute the application on behalf of the state". § 9–449. The ap-

plicant, at least one examiner and the patient (unless his presence would be injurious to him) shall be present, and the court is authorized to require any other person to appear and testify. The application, history and certificates of suitability by the two doctors are expressly made a part of the evidence in the case, and the statute pertinently provides that the proposed patient "may be represented by counsel". § 9–449. A jury may be demanded, and if it is found that the patient should be committed, the judge may forthwith order commitment.

Pursuant to this procedure, and at the instance of the mother, the application for Parker's commitment was signed by the County Attorney, and a hearing was conducted at which the prosecuting attorney, the certifying psychologist and the mother as natural guardian were all present. While the certifying physician did not appear, both his and the certifying psychologist's certificates of suitability were admitted into evidence. At no time during the hearing was Charles Parker represented by retained or appointed counsel, nor was he represented by a court appointed guardian ad litem. Parker was found to be a fit subject and was committed to the training school where he remained continually until 1963, at which time he was released to the custody of his parents. In 1965, against the wishes of his parents, he was returned to the training school where he remains to this day.

Subsequent to Parker's return to the school, this federal habeas corpus proceedings [1] was instituted alleging that he had been denied his constitutional right to counsel and confrontation in the proceedings pursuant to which he was originally confined in the training school. On remand the trial judge held that in view of Gault, Parker was constitutionally entitled to the assistance of counsel in the original commitment proceedings, and that while his mother as natural

guardian could have waived his rights, she did not expressly do so.

In the posture in which the case comes to us on this appeal the constitutionality of the Wyoming statute as according due process is not directly in issue. The state apparently takes the position, as indeed it must, that the standards for due process erected in Gault are not the same as required in civil proceedings such as these. The argument seems to be that the nature of the proceedings in Gault is easily distinguishable from ours in that Gault was concerned with commitment for correction or rehabilitation of juveniles, while our proceedings are concerned solely with civil commitment for teaching and training the mentally deficient.

It is true that Gault involved procedures for adjudging a juvenile offender "Delinquent" and committing him to a state institution. The query was whether he is entitled to the same Fourteenth Amendment due process procedures required to deprive an adult of his freedom for the commission of a crime. The effect of the decision was to place both juveniles and adults on the same Fourteenth Amendment due process footing. Mr. Justice Fortas reasoned that, "It is of no constitutional consequence * * * that the institution to which [a juvenile] is committed is called an Industrial School. The fact of the matter is that however euphemistic the title, a 'receiving home' or an 'industrial school' for juveniles is an institution of confinement in which the child is incarcerated for a greater or lesser time. His world becomes a 'building with whitewashed walls, regimented routine and institutional hours * * *'." The overriding consideration of the court was that in either case the determination carried with it the "awesome prospect of incarceration in a state institution." The court concluded that in these circumstances the Due Process Clause of the Fourteenth Amendment entitles the child

1. The petition for writ of habeas corpus alleges exhaustion of all available state remedies, and it seems to be conceded.

to the fundamental right of representation by counsel, confrontation and cross-examination.

■■■ We do not have the distinction between the procedures used to commit juveniles and adults as in Gault. But, like Gault, and of utmost importance, we have a situation in which the liberty of an individual is at stake, and we think the reasoning in Gault emphatically applies. It matters not whether the proceedings be labeled "civil" or "criminal" or whether the subject matter be mental instability or juvenile delinquency. It is the likelihood of involuntary incarceration—whether for punishment as an adult for a crime, rehabilitation as a juvenile for delinquency, or treatment and training as a feeble-minded or mental incompetent—which commands observance of the constitutional safeguards of due process. Where, as in both proceedings for juveniles and mentally deficient persons, the state undertakes to act in parens patriae, it has the inescapable duty to vouchsafe due process, and this necessarily includes the duty to see that a subject of an involuntary commitment proceedings is afforded the opportunity to the guiding hand of legal counsel at every step of the proceedings, unless effectively waived by one authorized to act in his behalf. Certainly, this duty is not discharged when, as here, the prosecuting attorney undertakes to "prosecute the application [for commitment] on behalf of the state", and the proposed patient is not otherwise represented by counsel. In re Custody of a Minor, 102 U.S.App.D.C. 94, 250 F.2d 419; Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84; McDaniel v. Shea, 108 U.S.App.D.C. 15, 278 F.2d 460; Dooling v. Overholser, 100 U.S.App.D.C. 247, 243 F.2d 825; Shioutakon v. District of Columbia, 98 U.S.App.D.C. 371, 236 F.2d 666; Anno. 87 A.L.R.2d 950. Nor is it sufficient that the Wyoming statute permissively provides that the proposed patient "may be represented by counsel". Fourteenth Amendment due process requires that the infirm person, or one acting in his behalf, be fully advised of his rights and accorded each of them unless knowingly and understandingly waived.

■■ We recognize, as did the court in Gault that special problems may arise with respect to the effective waiver of rights by minors and mentally deficient persons. But, we need not decide here whether Parker's mother as natural guardian, having set into motion the commitment machinery, represented such conflicting interests that she could not effectively waive her son's right to counsel, for we agree with the trial court, no one seems to dispute, and it is sufficient to affirmance that there was no express attempt to waive such right.

This brings us to the question of the retroactivity of the Fourteenth Amendment due process standards recognized for the first time in Gault and made applicable to situations like ours. The crux of the state's argument seems to be that there is nothing in the principles announced in Gault to warrant retroactivity and its application in collateral proceedings would result in wholesale release of inmates in the Wyoming institutions and like institutions all over the country.

■■■ Retroactivity of a rule establishing a new standard for Fourteenth Amendment due process is not automatic. Nor does it have case-by-case application. Rather, as we read the case law as epitomized in Stovall v. Deno, 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199, and Reck v. Pate, 367 U.S. 433, 81 S.Ct. 1541, 6 L.Ed.2d 948, retroactivity depends upon a pragmatic balancing of the public interests against the gravity of the right involved. Thus, if the rule or newly established standard goes to the very integrity of the fact finding process by which liberty is taken—as where the accused was convicted without benefit of counsel, i. e. see Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, or upon a coerced confession, i. e. see Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, or was denied an appeal because of his poverty, i. e. see Griffin v. People of State of Illinois, 351

U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891; Eskridge v. Washington State Bd. of Prison Terms & Paroles, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269; Cf. Hamilton v. State of Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114; Douglas v. People of State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 and also Cf. Peyton, Superintendent v. Rowe, et al., 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed. 2d 426—retroactivity should be accorded even though it may result in wholesale consideration of the standards by which factual determinations were made.

■ In our case the fundamental right to counsel is involved and failure to have counsel at every step of the proceedings may result in indefinite and oblivious confinement and work shameful injustice. Indeed, the expressed concern lest retroactivity in cases like these result in wholesale release from confinement in mental institutions is a compelling reason for the desirability, if not necessity, for retroactivity in our case.

Affirmed.