342 So.2d 648 (1977)
STATE of Louisiana
v.
Larry EVERFIELD.
No. 58308.
Supreme Court of Louisiana.
January 24, 1977.
*650 George F. Fox, Jr., Lake Providence, for defendant-relator.
*651 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John T. Seale, Dist. Atty., Thomas F. Wade, Asst. Dist. Atty., for plaintiff-respondent.
MARCUS, Justice.
This matter involves an attack on the constitutionality of La.R.S. 13:1571.1 which provides for the transfer of certain juveniles who have allegedly committed criminal offenses from the jurisdiction of the juvenile court to be tried as adults in the appropriate court exercising criminal jurisdiction. We granted certiorari to consider the constitutionality of this statute pursuant to which Larry Everfield, a juvenile sixteen years of age at the time of the alleged conduct, was transferred to the district court to be prosecuted for having allegedly committed the crime of armed robbery in violation of La.R.S. 14:64.[1]
It should be noted at the outset that Louisiana is by no means unique in allowing certain juveniles charged with criminal offenses to be transferred to district court for trial as adults. In Breed v. Jones, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975), the Supreme Court recognized that:
. . . [T]here appears to be widely shared agreement that not all juveniles can benefit from the special features and programs of the juvenile court system and that a procedure for transfer to an adult court should be available, [citation omitted.] This general agreement is reflected in the fact that an overwhelming majority of jurisdictions permits transfer in certain circumstances. As might be expected, statutory provisions differ in numerous details. Whatever their differences, however, such transfer provisions represent an attempt to impart to the juvenile court system the flexibility needed to deal with youthful offenders who cannot benefit from the specialized guidance and treatment contemplated by the system.
Prior to 1974, Louisiana law made no provision for juvenile transfer proceedings. The 1974 Louisiana Constitution, however, specifically authorized the enactment of such transfer procedures in article 5, § 19, which provides as follows:
Except for a person fifteen years of age or older who is alleged to have committed a capital offense or attempted aggravated rape, the determination of guilt or innocence, the detention, and the custody of a person who is alleged to have committed a crime prior to his seventeenth birthday shall be exclusively pursuant to special juvenile procedures which shall be provided by law. However, by law enacted by two-thirds of the elected members of each house, the legislature may (1) lower the maximum ages of persons to whom juvenile procedures would apply and (2) establish a procedure by which the court of original jurisdiction may waive such special juvenile procedures in order that adult procedures would apply in individual cases. [Emphasis added.]
In response to this constitutional authorization, the legislature subsequently enacted La.R.S. 13:1571.1 which outlines the following criteria and procedure for transfer of certain juveniles for trial in an adult court:
A. Effective January 1, 1975, after a petition has been filed alleging delinquency based on conduct which is designated a crime or public offense by the statutes of the United States, of this state, or by ordinance of local political subdivisions exercising general governmental functions, the court, before hearing the petition on its merits, may transfer the alleged *652 offender for prosecution to the appropriate court exercising criminal jurisdiction if the district attorney, the alleged offender, or the court on its own motion, files a transfer petition and the following conditions are met:
(1) The child has attained the age of fifteen years or more at the time of the alleged conduct;
(2) A hearing on whether the transfer should be made is held in conformity with R.S. 13:1571.2;
(3) Notice in writing of the time, place and purpose of the hearing is given to the child and his parents, tutor, or other custodian at least ten days before the hearing; and
(4) The court finds that there are reasonable grounds to believe that the child is not amenable to treatment or rehabilitation through facilities available to the juvenile court.
(5) The child has previously been adjudicated a delinquent by the commission of any of the following offenses: second degree murder, manslaughter, negligent homicide, simple rape, armed robbery, aggravated battery, aggravated burglary, aggravated arson and aggravated kidnapping.
B. The transfer terminates the jurisdiction of the juvenile court over the child with respect to the delinquent acts alleged in the petition.
C. No child, either before or after attaining the age of seventeen shall be prosecuted in criminal court for an offense which was allegedly committed by the child who had not then attained the age of seventeen unless the case has been transferred to criminal court as provided herein, or except as otherwise provided by law.
In 1975, the statute was amended to add the following provision:
D. Notwithstanding any provision of law to the contrary when an offender fifteen years of age or older is charged with armed robbery or a crime punishable by life imprisonment, and a petition is filed in the juvenile court requesting the transfer of the offender to a district court of general criminal jurisdiction in accordance with R.S. 13:1571.1 et seq., should the juvenile court approve the petition for transfer the juvenile court shall order such transfer without a previous adjudication of delinquency and the provisions of Paragraph 5 of Subsection A of this Section shall not be applicable in such instance.
Defendant attacks the constitutionality of La.R.S. 13:1571.1 on several grounds. He argues: (1) that the statute exceeds the authorization contained in La.Const. art. 5, § 19; (2) that it contravenes the separation of powers doctrine embodied in La.Const. art. 2, § 2; and (3) that it violates his rights to equal protection and due process of law as guaranteed by the state and federal constitutions. We do not agree.
Defendant's first contention is that La.Const. art. 5, § 19 does not authorize a statute contemplating a transfer of jurisdiction to the district court. He claims that art. 5, § 19 envisions only a waiver in certain cases of the procedural rules for pleading and practice ordinarily used in the juvenile court. This argument is totally without merit. The term "procedures" as used in the provisions clearly comprehends the whole system for dealing with juvenile lawbreakers. Therefore, the provision authorizing the legislature to establish a procedure by which the court of original jurisdiction (juvenile court) may "waive such special juvenile procedures in order that adult procedures would apply in individual cases" addresses itself to the transfer of jurisdiction and not an alternative set of rules for pleading and practice. Accordingly, La.R.S. 13:1571.1 establishing a procedure for transfer of certain juveniles for trial as adults in the appropriate court exercising criminal jurisdiction falls squarely within the authorization of La.Const. art. 5, § 19.
The next issue presented for our consideration is whether the vesting of authority in a juvenile court judge to determine when the statutory conditions for transfer are met constitutes an improper delegation of legislative power in violation *653 of the separation of powers doctrine embodied in La.Const. art. 2, § 2. Defendant contends that the juvenile transfer procedure effectively permits the juvenile court judge to determine what acts constitute crimes, a purely legislative function which cannot be delegated to the judiciary. This argument is founded on an erroneous appreciation of the nature of transfer proceedings. Nowhere in La.R.S. 13:1571.1 is the juvenile court judge empowered to determine the elements of a crime or who shall be punished as a criminal. All criminal acts for which transfer is permissible are defined by laws enacted by the legislative branch of government. La.R.S. 13:1571.1 merely outlines a procedure for determining whether certain juveniles who commit legislatively-defined criminal acts shall be handled in a juvenile court or tried as an adult in the appropriate court exercising criminal jurisdiction. The legislature has prescribed fixed conditions which must exist before a transfer of jurisdiction may be ordered; the juvenile court judge is charged only with the duty of determining when these conditions have been satisfied. This court has recognized that the legislature may properly make the operation of a statute contingent on the existence of certain conditions and may delegate the power to determine when those conditions exist to another branch of government. Schwegmann Bros. Giant Supermarkets v. McCrory, 237 La. 768, 112 So.2d 606 (1959). Accordingly, we find no violation of the separation of powers doctrine implicit in the operation of Louisiana's transfer statute.
Defendant next argues that La.R.S. 13:1571.1 is unconstitutional in that it deprives him of equal protection under the law. He contends that, pursuant to the transfer procedure, juveniles who have committed the same offense may receive different treatment.
Generally stated, the guarantee of equal protection of the laws is that all individuals similarly situated be treated equally. State v. Ross, 304 So.2d 354 (La. 1974). It is fundamental that a statutory enactment of the legislature is presumed to be constitutional. state v. Devall, 302 So.2d 909 (La.1974). Where, as here, there is no involvement of a "suspect classification" or "fundamental right" traditional equal protection analysis sustains a classification if it is not arbitrary and bears a rational relationship to a legitimate state interest. Chabert v. Louisiana High School Athletic Ass'n, 323 So.2d 774 (La.1975). Moreover, the burden is upon the party claiming the unconstitutionality to show that the classification inherent in the statute has no rational basis. State v. Brown, 288 So.2d 339 (La.1974).
Beyond his mere assertion that some juveniles are treated differently than others, defendant in the instant case makes no showing that these differences in treatment constitute a denial of equal protection. To the contrary, we are satisfied that the state has a legitimate interest in distinguishing between youths who may be rehabilitated and those who will derive no benefit from the more lenient treatment afforded in the juvenile system. By limiting transfer to juveniles over the age of fifteen at the time of the alleged conduct, who (except in the case of armed robbery or a crime punishable by life imprisonment) have previously been adjudicated delinquent for commission of any of certain specified serious offenses, and who are shown at a hearing to be "not amenable to treatment or rehabilitation," the legislature has devised a statute rationally related to that legitimate interest. Hence, we find no merit in defendant's allegation that the dual classification of youthful lawbreakers contemplated by the transfer procedure is invidious, arbitrary or irrational.[2]
Nor do we find merit in defendant's contention that the 1975 addition to La.R.S. 13:1571.1 of paragraph "D" is violative of *654 equal protection or due process. A reading of the statute as a whole reveals that all but one of the preconditions to transfer incorporated in La.R.S. 13:1571.1 apply to the transfer of a juvenile who has been charged with armed robbery or a crime punishable by life imprisonment for trial pursuant to paragraph "D." Only the requirement for a previous adjudication of delinquency is omitted. We cannot agree that it is a violation of due process or equal protection to make a distinction in procedure where the alleged offense is armed robbery or a crime punishable by life imprisonment in view of the legislature's evaluation of the gravity of these types of crimes and their threat to public safety as demonstrated by their respective prescribed penalties of life imprisonment or, in the case of armed robbery, ninety-nine years at hard labor without benefit of parole, probation or suspension of sentence.
Defendant next argues that the transfer statute itself is unconstitutional in that it denies juveniles due process of law. In Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), the United States Supreme Court reviewed the procedures used in waiving juvenile court jurisdiction under a statute much broader in scope than our own.[3] The Court found that, although not specifically provided for in the statute, the District Court of Columbia transfer procedure assumed "procedural regularity sufficient in the particular circumstances to satisfy the basic requirements of due process and fairness . . ." These requirements were held to include: (1) a hearing with effective assistance of counsel; (2) access by defense counsel to all social, probation and other reports relevant to the issue of transfer or considered by the court in making its determination; and (3) a statement setting forth the reasons for the juvenile court's ruling with sufficient specificity to permit meaningful review.[4] In most respects, the provisions for transfer in Louisiana comply with and go beyond the due process standards outlined in Kent. La.R.S. 13:1571.2 provides for a hearing held after ten days written notice as mandated by La.R.S. 13:1571.1A(3).[5] The juvenile is entitled to present evidence in his own behalf and to cross-examine witnesses against him. Also, he shall not be required to be a witness against himself or to otherwise give evidence against himself. La.R.S. 13:1571.4. A juvenile must be represented by an attorney at the transfer hearing and provision is made for appointment of counsel for indigent juveniles. La.R.S.13:1571-3. Full proceedings will be recorded at the request of the juvenile, his parents, attorney, or on motion of the court. La.R.S. *655 13:1571.2. Although our statute makes no specific provision for access by counsel to the juvenile's records or for a statement of reasons for judgment by the juvenile judge, neither does it contravene in any way these due process requirements announced in Kent. We therefore find it unnecessary to rule our transfer statute unconstitutional. Instead, we assume that the statute was intended to be subject to constitutional standards of procedural due process and consider them implicitly embodied in the statute as did the United States Supreme Court in Kent with respect to the District of Columbia statute there in question.[6]
Defendant, nevertheless, contends that the absence of standards to guide a judge in determining which juveniles are transferable for trial in district court in practice abridges his right to equal protection and due process of law. He claims that the transfer requirement embodied in La.R.S. 13:1571.1A(4) is impermissibly vague, thereby rendering the statute unconstitutional.
Unlike the transfer statutes enacted in many states which allow a judge broad discretion to transfer juveniles for trial as an adult,[7] Louisiana permits a waiver of juvenile jurisdiction in only one limited circumstance. La.R.S. 13:1571.1 authorizes juvenile transfers only when the specific statutory conditions are met and
[t]he court finds that there are reasonable grounds to believe that the child is not amenable to treatment or rehabilitation through facilities available to the juvenile court.
We interpret this phrase to sanction transfer of only those youths for whom there is no hope of treatment or rehabilitation in the types of facilities utilized by juvenile courts. While this criteria necessarily calls for evaluation and judgment by the juvenile court judge, it is not unconstitutionally vague; it is couched in language within common usage and is sufficiently clear to enable a person of ordinary intelligence to comprehend its import. The numerous conditions which must be satisfied before a juvenile transfer is appropriate manifest the legislative intent that non-criminal treatment of juveniles is to be favored. Furthermore, La.R.S. 13:1592 specifically articulates the general policy and purpose of the juvenile court system to insure a child's welfare by providing him with care as nearly equivalent as possible to that he would receive in a home environment. These manifestations of legislative intent effectively limit and guide the juvenile court judge's discretion.[8] Juvenile court judges of this state must recognize, as did the United States Supreme Court in Kent, that the decision to transfer a child for trial as an adult is a critically important one accompanied by tremendous consequences. Accordingly, the decision that juvenile is not amenable to treatment or rehabilitation should be based on a careful review of relevant considerations such as the age, maturity and sophistication of the juvenile; *656 the nature and seriousness of the offense charged; prior acts of delinquency, if any, and their nature and seriousness; past efforts at rehabilitation and treatment and the juvenile's response thereto; whether the juvenile's behavior might be related to physical or mental problems; and the techniques, programs, personnel and facilities available to the juvenile court system which might be competent to deal with the problems of the particular juvenile whose transfer is being considered.[9] We do not mean to suggest that these are the only relevant considerations. The juvenile court judge must evaluate each case on its own merits. There are no specific standards mandated by either the state or federal constitutions. In Breed v. Jones, supra, the Supreme Court noted that, although certain procedural due process rights set forth in Kent must be afforded at a transfer hearing,
. . . the Court has never attempted to prescribe criteria for, or the nature and quantum of evidence that must support, a decision to transfer a juvenile for trial in adult court.
In the final analysis, whether or not a youth is amenable to treatment of rehabilitation is a matter within the sound discretion of the juvenile court judge who has the opportunity to hear the evidence and to observe the juvenile. The exercise of this discretion must, of course, be principled. It must reflect the policy in favor of non-criminal treatment of children under seventeen years of age and the types of considerations set forth hereinabove. Moreover, there is the additional safeguard that the juvenile court judge must state his reasons for judgment with sufficient particularity to insure meaningful review by this court. Thus, we are satisfied that an adequate guide exists for the limited discretion vested in the juvenile court judge by La. R.S. 13:1571.1 A(4).
Inasmuch as the decision to transfer Larry Everfield for trial as an adult was made without benefit of the principles articulated in this opinion, we deem it in the best interest of justice to remand the case for a new transfer hearing to be held and *657 ruled on in accordance with the views expressed herein. Accordingly, we do not review the merits of the transfer at this time, recognizing that both defendant and the state will have a right to seek review by writ of certiorari at the conclusion of the second transfer hearing.
We note that defendant in this case also applied for relief from the juvenile court's transfer order by way of appeal.[10] La.R.S. 13:1571.4B provides that the decision of the juvenile court to transfer or not to transfer the case to the court exercising criminal jurisdiction is only an "interlocutory" judgment which either the child or the state, or both, have the right to have "reviewed" summarily by this court by preference. We are satisfied that such review is by writ of certiorari under our general supervisory jurisdiction. La.Const. art. 5, § 5(A) (1974). Accordingly, we dismiss defendant's appeal which was based on the same grounds and prayed for the same relief.

DECREE
For the reasons assigned, defendant's appeal is dismissed; the transfer order is annulled and set aside; and the case is remanded to the juvenile court for the Parish of East Carroll for a new transfer hearing in accordance with the law and the views expressed in this opinion.
DENNIS, J., concurs with reasons.
DENNIS, Justice, concurring.
I wholly concur in the decree and substantially all of the opinion of the Court. However, in order to more surely guide the trial judges in this case and others we should rule specifically on each of the issues presented.
The State's failure to give the juvenile's parents notice in writing of the purpose of the hearing in accordance with La.R.S. 13:1571.1(A)(3) constituted a substantial violation of the juvenile's statutory and constitutional rights, resulting in a probable miscarriage of justice and, consequently, reversible error. La.C.Cr.P. art. 921. See In re Gault, 387 U.S. 1, 33, 87 S.Ct. 1428, 1446, 18 L.Ed.2d 527, 549 (1967) ("Notice, to comply with due process requirements, must be given sufficiently in advance of scheduled court proceedings so that reasonable opportunity to prepare will be afforded, and it must "set forth the alleged misconduct with particularity.'") (Emphasis supplied.) If the parents had been apprised of the extremely serious nature of the proceedings rather than being informed merely that a petition had been filed alleging that he was a "delinquent child," perhaps they would have employed counsel and subpoenaed expert witnesses in an effort to rebut the State's evidence. Instead, the juvenile received a perfunctory defense, to describe it generously, and was unable to call any witnesses in his behalf. Only after the transfer hearing and the disastrous events that followed did the juvenile obtain the services of his present attorney and commence to vigorously assert his rights.
The United States Supreme Court observed in McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971) that:
"From these six cases[*] it is apparent that:
"1. Some of the constitutional requirements attendant upon the state criminal trial have equal application to that part of the state juvenile proceeding that is adjudicative in nature. Among these are the rights to appropriate notice, to counsel, to confrontation and to crossexamination, *658 and the privilege against self-incrimination. Included, also, is the standard of proof beyond a reasonable doubt.
 "2. The Court, however, has not yet said that all rights constitutionally assured to an adult accused of crime also are to be enforced or made available to the juvenile in his delinquency proceeding. Indeed, the Court specifically has refrained from going that far:
"We do not mean by this to indicate that the hearing to be held must conform with all of the requirements of a criminal trial or even of the usual administrative hearing; but we do hold that the hearing must measure up to the essentials of due process and fair treatment." Kent, 383 U.S. at 562, 86 S.Ct. at 1057 [16 L.Ed.2d at 97, 98]; Gault, 387 U.S. at 30, 87 S.Ct. at 1445 [18 L.Ed.2d at 548]." 403 U.S. at 534, 91 S.Ct. at 1980. (Emphasis supplied.)
Because a transfer proceeding is a "juvenile proceeding that is adjudicative in nature" and the requirement of proof beyond a reasonable doubt is one of the "essentials of due process and fair treatment," I think a Louisiana juvenile judge must find beyond a reasonable doubt "that the child is not amenable to treatment or rehabilitation through facilities available to the juvenile court" and that the other requirements of La.R.S. 13:1571.1(A) have been met, before a juvenile may be transferred to the criminal court for prosecution.
The majority opinion may have inadvertently indicated that Breed v. Jones, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975) casts doubt on this conclusion. However, the basic holding in Breed was that the transfer and trial of a juvenile as an adult after his trial in juvenile court for the same offense violated the double jeopardy clause. In dicta, the Court said:
"* * * [C]ourts should be reluctant to impose on the juvenile court system any additional requirements which could so strain its resources as to endanger its unique functions. However, the burdens that petitioner envisions appear to us neither qualitatively nor quantitatively sufficient to justify a departure in this context from the fundamental prohibition against double jeopardy.
"A requirement that transfer hearings be held prior to adjudicatory hearings affects not at all the nature of the latter proceedings. More significant, such a requirement need not affect the quality of decisionmaking at transfer hearings themselves. In Kent v. United States, 383 U.S., at 562, 86 S.Ct. at 1057, the Court held that hearings under the statute there involved `must measure up to the essentials of due process and fair treatment.' However, the Court has never attempted to prescribe criteria for, or the nature and quantum of evidence that must support, a decision to transfer a juvenile for trial in adult court. We require only that, whatever the relevant criteria, and whatever the evidence demanded, a State determine whether it wants to treat a juvenile within the juvenile court system before entering upon a proceeding that may result in an adjudication that he has violated a criminal law and in a substantial deprivation of liberty, rather than subject him to the expense, delay, strain, and embarrassment of two such proceedings.[18].

"* * *
"[Footnote 18] We note that nothing decided today forecloses States from requiring, as a prerequisite to the transfer of a juvenile, substantial evidence that he committed the offense charged, so long as the showing required is not made in an adjudicatory proceeding. See Collins v. Loisel, 262 U.S. 426, 429, 43 S.Ct. 618, 625, 67 L.Ed. 1062 (1923); Serfass v. United States, 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975). The instant case is not one in which the judicial determination was simply a finding of, e.g., probable cause. Rather, it was an adjudication that respondent had violated a criminal statute." 95 S.Ct. at 1789-90.
As I read this passage, the Court did not intend to relieve the states of the burden of proof beyond a reasonable doubt in juvenile *659 transfer cases, which it seemed to recognize as intrinsic to a due process transfer in Kent, as elaborated upon by In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and McKeiver, supra. Instead, the dicta was designed to assure that no change of procedure is demanded of those states which require, as a prerequisite to a juvenile transfer, a showing of probable cause or substantial evidence that the juvenile committed the offense. Obviously, such a prerequisite showing, which is not required by Kent or Louisiana law, need not be made beyond a reasonable doubt. However, after the Court's pronouncements in Kent, Gault and Winship, I cannot believe that it intended by such dicta to relieve the State of a high standard of proof on the central issue of the juvenile's amenability to treatment or rehabilitation. Before a child may be taken from a juvenile detention center and transferred to jail along with adults, afterwards to be exposed to the possibility of a 99-year penitentiary sentence without the possibility of parole instead of treatment or training in a juvenile institution, his incorrigibility must be proven by more than a mere preponderance of evidence. Compare, for example, the United States Supreme Court's rejection of the preponderance standard in deportation proceedings, where it held the government must support its allegations with "clear, unequivocal, and convincing evidence."Woodby v. Immigraton and Naturalization Service, 385 U.S. 276, 285, 87 S.Ct. 483, 17 L.Ed.2d 362, 369 (1966). Although the Court ruled in Woodby that deportation is not tantamount to a criminal conviction, it found that since it could lead to "drastic deprivations," it is impermissible for a person to be "banished from this country upon no higher degree of proof than applies in a negligence case." 385 U.S. at 285, 87 S.Ct. at 487, 17 L.Ed.2d at 368.
In Winship, supra, the Court plainly stated:
"Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." 397 U.S. at 364, 90 S.Ct. at 1073.
In State v. Searle, 339 So.2d 1194, 1202 (La.1976) we concluded that the same obligation is imposed by our state constitution. Of course, Winship involved the adjudication of a criminal charge against a juvenile instead of a juvenile transfer proceeding. However, its rationale is fully apt here. Although not included within the statutory definition of a crime, the fact that a child is unsuitable for juvenile treatment or rehabilitation is one which the state must prove in order to transfer and convict him of a crime as an adult. For this reason alone, it is arguable that due process requires the state to prove this essential fact beyond a reasonable doubt. More importantly, however, the same reasons for exacting proof beyond a reasonable doubt in criminal cases exist in juvenile transfer proceedings.
Justice Harlan, concurring in Winship, persuasively stated:
"* * * In a civil suit between two private parties for money damages, for example, we view it as no more serious in general for there to be an erroneous verdict in the defendant's favor than for there to be an erroneous verdict in the plaintiff's favor. A preponderance of the evidence standard therefore seems peculiarly appropriate for, as explained most sensibly, it simply requires the trier of fact `to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the [judge] of the fact's existence.'
"In a criminal case, on the other hand, we do not view the social disutility of convicting an innocent man as equivalent to the disutility of acquitting someone who is guilty. As Mr. Justice Brennan wrote for the Court in Speiser v. Randall, 357 U.S. 513, 525-526, 78 S.Ct. 1332, 2 L.Ed.2d 1460, 1472 (1958):
"There is always in litigation a margin of error, representing error in fact finding, which both parties must take *660 into account. Where one party has at stake an interest of transcending value-as a criminal defendant his libertythis margin of error is reduced as to him by the process of placing on the other party the burden * * * of persuading the fact-finder at the conclusion of the trial of his guilt beyond a reasonable doubt.'

"* * *
"When one assesses the consequences of an erroneous factual determination in a juvenile delinquency proceeding in which a youth is accused of a crime, I think it must be concluded that, while the consequences are not identical to those in a criminal case, the differences will not support a distinction in the standard of proof. First, and of paramount importance, a factual error here, as in a criminal case, exposes the accused to a complete loss of his personal liberty through a state-imposed confinement away from his home, family, and friends. And, second, a delinquency determination, to some extent at least, stigmatizes a youth in that it is by definition bottomed on a finding that the accused committed a crime. Although there are no doubt costs to society (and possibly even to the youth himself) in letting a guilty youth go free, I think here, as in a criminal case, it is far worse to declare an innocent youth a delinquent. I therefore agree that a juvenile court judge should be no less convinced of the factual conclusion that the accused committed the criminal act with which he is charge than would be required in a criminal trial." 397 U.S. at 371-74, 90 S.Ct. at 1076. (Footnotes omitted.)
I find his words equally convincing when applied to a juvenile transfer proceeding. The consequences of an erroneous factual determination in such a proceeding, viz., that a child amenable to treatment or rehabilitation would be subjected to adult jails and criminal prosecution, are not identical to those suffered by an innocent juvenile or adult convicted of a crime. But the differences will not support a distinction in the standard of proof. Although there are no doubt costs to society in mistakenly allowing an incorrigible youth to remain in the juvenile system, it would be far worse to erroneously transfer a reformable child to the adult criminal system.
The juvenile in the instant case squarely raised the issue of whether the transfer was adequately supported by the evidence. In my view it was not. Larry Everfield was born August 6, 1959 and had his first contract with the juvenile justice system in 1971, while he was in elementary school; he was charged with shoplifting cookies worth thirty cents and placed on supervised probation. Thereafter, he was involved in several fighting incidents at school; and in January of 1975 he was suspended from Downsville High School for "continuous" misbehavior" and "arrogant attitude," a suspension which was considered a probation violation. Nevertheless, he was allowed to remain on supervised probation. His parents were divorced, and he resided alternately with his father in Monroe and his mother in Downsville. On May 29,1975 he was charged with theft of a purse, placed in a detention home in Monroe, Louisiana and later transferred to the Louisiana Training Institute. On about January 22, 1976, he escaped from LTI and on January 26, 1976 allegedly committed the armed robbery at issue here, by demanding two hamburgers at a fast food restaurant while holding a pistol on the attendant. At this time Everfield was sixteen years old.
At the transfer hearing two juvenile correctional officers testified. One expressed his opinion that Larry was not amenable to rehabilitation. The other officer said, "I couldn't just say that he was completely a lost cause." The record reflects that Larry was sent by his mother to two hospitals for a psychological evaluation but was soon discharged because he "would not cooperate." Consequently, the court was unenlightened by any medical, psychiatric or psychological opinion of Larry's possible mental or emotional problems or their susceptibility to correction. Nor does there appear to have been any investigation to determine if the child could be evaluated, treated or trained at other available institutions.
*661 Based on the evidence presented I am of the opinion the juvenile judge fell into error in finding that Everfield was not amenable to rehabilitation or treatment through facilities available to the juvenile court. However, as the majority opinion observes, the juvenile judge was forced to make this determination without benefit of the principles articulated in this case. Accordingly, I concur in remanding the case to the juvenile court for further proceedings consistent with the views expressed by this Court.
NOTES
[1] Subsequent to the decision transferring him to district court for trial as an adult, Larry Everfield pleaded guilty to the charge of armed robbery as well as to two charges of simple burglary. He was sentenced to serve a total of sixty-one years at hard labor. Defendant's newly appointed counsel moved for a new trial. Due to defendant's youth, the trial judge granted the motion. Defendant is currently awaiting a new trial in district court pending the outcome of this application for a writ of certiorari. It is generally conceded that it was improper to transfer Everfield for prosecution for the burglary charges inasmuch as he had not been previously adjudicated a delinquent of any of the offenses listed in La.R.S. 13:1571.1A(5).
[2] Similar equal protection attacks on the statutes of other states have routinely been held to lack merit. State ex rel. Indiana Youth Center v. Howard Juv. Court, 344 N.E.2d 842 (Ind.1976); In re Welfare v. I.Q.S., 244 N.W.2d 30 (Minn.1976); State v. Lemon, 110 Ariz. 568, 521 P.2d 1000 (1974); State v. Rutledge, 321 Mo. 1090, 13 S.W.2d 1061 (1929).
[3] The disputed transfer in Kent was ordered pursuant to the following District of Columbia statute:

If a child sixteen years of age or older is charged with an offense which would amount to a felony in the case of an adult, or any child charged with an offense which if committed by an adult is punishable by death or life imprisonment, the judge may, after full investigation, waive jurisdiction and order such child held for trial under the regular procedure of the court which would have jurisdiction of such offense if committed by an adult; or such other court may exercise the powers conferred upon the juvenile court in this subchapter in conducting and disposing of such cases.
[4] Although the decision in Kent indicated that its scope was limited to the interpretation of a state statute, subsequent references to Kent in In re Gault, 387 U.S. 1, 12, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) suggest that the due process requirements articulated in Kent are of constitutional dimension. The weight of authority is now to that effect. Powell v. Hocker, 453 F.2d 652 (9th Cir. 1971); United States ex rel. Turner v. Rundle, 438 F.2d 839 (3rd Cir. 1971) and case cited therein. Schornhorst, The Waiver of Juvenile Court Jurisdiction: Kent Revisited, 43 Ind.L.J. 583, 585-88 (1968).
[5] La.R.S. 13:1571.1A(3) provides that notice in writing of the time, place and purpose of the transfer hearing be given to the child and his parents, tutor or other custodian at least ten days before the hearing. The record indicates that Larry Everfield and his parents were given notice of a hearing to be held pursuant to a petition alleging that Larry Everfield is a "delinquent child." It does not appear that they were informed that the hearing might also result in a transfer of the juvenile to district court. This defect in the proceedings was not raised at the transfer hearing. In view of our disposition of the case, we find it unnecessary to rule on whether this omission was fatal to the proceedings.
[6] The Supreme Court did not hold that the District of Columbia statute was unconstitutional but remanded the case for a hearing de novo on waiver of juvenile jurisdiction to be held in compliance with the statute as supplemented by the requirements of procedural due process.
[7] A survey of the transfer procedures employed in other states reveals that the various statutes frequently provide either no criteria for transfer whatsoever or provide several broad criteria for transfer which vest the judge with greater discretion than does the Louisiana procedure. These statutes with rare exceptions have been upheld as constitutional. Examples of the discretionary criteria incorporated in other statutes include "the community attitude toward the specific offense," "the interests of the public demanding trial as an adult," and "the best interest of public security." S. Davis, Rights of Juveniles: The Juvenile Justice System 105-21 (1974).
[8] Many jurisdictions have responded to claims that their transfer statutes vest unbridled discretion in the juvenile court judge by holding that the general purpose clauses in their statutes favoring non-criminal treatment of juveniles provide sufficient guidelines for the exercise of discretion. State in Interest of Salas, 520 P.2d 874 (Utah 1974); State v. Williams, 473 S.W.2d 382 (Mo. 1971); Lewis v. State, 86 Nev. 889, 478 P.2d 168 (1970); People v. Shipp, 59 Cal.2d 845, 31 Cal.Rptr. 457, 382 P.2d 577 (1963); State v. Doyal, 59 N.M. 454, 286 P.2d 306 (1955).
[9] In Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), the Court attached to its decision a policy memorandum issued by the District of Columbia Juvenile Court listing the following standards relevant to a determination of whether or not a juvenile should be transferred for trial as an adult:

1. The seriousness of the alleged offense to the community and whether the protection of the community requires waiver.
2. Whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner.
3. Whether the alleged offense was against persons or against property, greater weight being given to offenses against persons especially if personal injury resulted.
4. The prosecutive merit of the complaint, i. e., whether there is evidence upon which a Grand Jury may be expected to return an indictment (to be determined by consultation with the United States Attorney).
5. The desirability of trial and disposition of the entire offense in one court when the juvenile's associates in the alleged offense are adults who will be charged with a crime in the U.S. District Court for the District of Columbia.
6. The sophistication and maturity of the juvenile as determined by consideration of his home, environmental situation, emotional attitude and pattern of living.
7. The record and previous history of the juvenile, including previous contacts with the Youth Aid Division, other law enforcement agencies, juvenile courts and other jurisdictions, prior periods of probation to this Court, or prior commitments to juvenile institutions.
8. The prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the juvenile (if he is found to have committed the alleged offense) by the use of procedures, services and facilities currently available to the Juvenile Court.
The Supreme Court did not express an opinion concerning these standards. It should be noted that they were formulated for use in connection with a statute providing no criteria whatsoever for a determination to waive juvenile jurisdiction. (See footnote 3 of this opinion for the text of the statute.) Inasmuch as our transfer statute permits transfer only in the limited circumstance that a juvenile is "not amenable to treatment or rehabilitation," several of the eight considerations listed above are inapplicable. Factors four and five, for instance, would expand rather than restrict the occasions justifying a waiver of juvenile jurisdiction under our statute. We decline, therefore, to adopt these standards in toto but instead suggest only those considerations relevant to our own statutory criteria for waiver.
[10] Defendant's appeal No. 58,464 was consolidated with his writ application granted in No. 58,308.
[*] [Haley v. Ohio, 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224 (1948); Gallegos v. Colorado, 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325 (1962); Kent v. United States. 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966); In re Gault. 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); DeBacker v. Brainard, 396 U.S. 28, 90 S.Ct. 163, 24 L.Ed.2d 148 (1969); In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).]