SUMMERS, Justice.
Relator Robert A. Smith is a juvenile, age sixteen. He was arrested and a petition was filed on September 13, 1977 in East Baton Rouge Family Court charging him with three counts of armed robbery, one count of attempted armed robbery and one count of aggravated battery, alleged to have been committed in August and September 1977. To this petition relator’s counsel filed a motion for preliminary examination, oyer and bond reduction. On October 14, 1977 the district attorney, by amended motion under the authority of Section 1571.1 of Title 13 of the Revised Statutes, requested that relator be transferred to the district court for trial as an adult.
On November 7,1977, a hearing was held on the motion for transfer and the motion for a preliminary hearing. After hearing witnesses for the state and the defense, the *1272 trial judge determined that there was “probable cause” under the statutes and authority to transfer relator to the District Court and the transfer was ordered. Cer-tiorari was granted on relation of the juvenile.
It is relator’s contention that the transfer to the district court for trial as an adult does not meet the statutory and jurisprudential requirements for juvenile transfers.
Section 19 of Article V of the Constitution authorized the legislature to “establish a procedure by which the court of original jurisdiction may waive such special juvenile procedures in order that adult procedures would apply in individual cases.” Pursuant to this authority Section 1571.1 of Title 13 of the Revised Statutes was enacted by the legislature prescribing the following procedure for transfer from juvenile courts:
“A. Effective January 1, 1975, after a petition has been filed alleging delinquency based on conduct which is designated a crime or public offense by the statutes of the United States, of this state, or by ordinance of local political subdivisions exercising general governmental functions, the court, before hearing the petition on its merits, may transfer the alleged offender for prosecution to the appropriate court exercising criminal jurisdiction if the district attorney, the alleged offender, or the court on its own motion, files a transfer petition and the following conditions are met:
(1) The child has attained the age of fifteen years or more at the time of the alleged conduct:
(2) A hearing on whether the transfer should be made is held in conformity with R.S. 13:1571.2:
(3) Notice in writing of the time, place and purpose of the hearing is given to the child and his parents, tutor, or other custodian at least ten days before the hearing; and
(4) The court finds that there are reasonable grounds to believe that the child is not amenable to treatment or rehabilitation through facilities available to the juvenile court.
(5)The child has previously been adjudicated a delinquent by the commission of any of the following offenses: second degree murder, manslaughter, negligent homicide, simple rape, armed robbery, aggravated battery, aggravated burglary, aggravated arson and aggravated kidnapping.
B. The transfer terminates the jurisdiction of the juvenile court over the child with respect to the delinquent acts alleged in the petition.
C. No child, either before or after attaining the age of seventeen shall be prosecuted in criminal court for an offense which was allegedly committed by the child who had not then attained the age of seventeen unless the case has been transferred to criminal court as provided herein, or except as otherwise provided by law.
D. Notwithstanding any provision of law to the contrary when an offender fifteen years of age or older is charged with armed robbery or a crime punishable by life imprisonment, and a petition is filed in the juvenile court requesting the transfer of the offender to a district court of general criminal jurisdiction in accordance with R.S. 13:1571.1 et seq., should the juvenile court approve the petition for transfer the juvenile court shall order such transfer without a previous adjudication of delinquency and the provisions of Paragraph 5 of Subsection A of this Section shall not be applicable in such instance.”
Relator’s principal contention is that the juvenile court judge did not find “that there were reasonable grounds to believe that the child is not amenable to treatment or rehabilitation through facilities available to the juvenile court” as required by Section 1571.1 A(4).
At the transfer hearing five state witnesses testified. Pour of the witnesses *1273 were victims of the crimes charged in this case. Roger Smith was the State’s other witness. He had been relator’s juvenile probation officer since February 1977. He testified from juvenile court records that relator was first referred to the court on March 22, 1975 for the crime of receiving stolen property (bicycle handlebars) and was counseled and warned by the intake division. Relator was next brought before the juvenile court on September 8, 1975, this time for the crime of criminal trespass (shooting pool at the LSU Baptist Student Union). He was again counseled and warned by the intake division. On December 10, 1976, relator was referred to the court for the third time. The complaint was his failure to move on when requested to do so by the police. He was counseled and warned again. The fourth time relator was referred to the court he was charged with possession of stolen property (two stereo speakers and a wallet). This January 14, 1977 referral resulted in a warning. There was no determination of guilt. Then, on February 23, 1977 relator was referred to the court for the crimes of attempted armed robbery and aggravated battery, the latter charge for hitting a boy with a stick in a fight. Relator pled guilty to the crime of aggravated battery, was adjudicated delinquent and placed on a suspended commitment. The attempted armed robbery charge was nolle prossed.
Smith testified that he supervised approximately 55 juveniles and that, in his opinion, on a one-to-ten scale, relator ranked five in terms of delinquency. He further stated that he did not believe defendant was beyond rehabilitative help; that he counseled defendant only one-half hour per month; that defendant had never been seen by a psychologist or a counselor other than himself; and that the court had not exhausted all of its services on defendant.
Thereafter, the four victims of the charges involved in this case were examined by the State in connection with relator’s motion for a preliminary hearing. They were cross-examined by relator’s counsel. The testimony amply supports a finding that there was probable cause to charge relator with the offenses in question. La.Code Crim.Pro. art. 296. But this is not the issue. The question we must decide is whether the juvenile court found that there were reasonable grounds to believe that the child was not amenable to treatment or rehabilitation through facilities available to the juvenile court as ordained by Section 1571.1 A(4).
In State v. Everfield, 342 So.2d 648 (La.1977), a sixteen-year-old youth accused of armed robbery was transferred to the district court and there received a 6V2 year sentence after pleading guilty to the crime charged. This Court granted certiorari and analyzed the United States Supreme Court cases of Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966) and Breed v. Jones, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975). In doing so the Court interpreted the statutory standards set forth in Section 1571.1 A(4) to be applied in juvenile transfer proceeding as follows:
“We interpret this phrase to sanction transfer of only those youths for whom there is no hope of treatment or rehabilitation in the types of facilities utilized by juvenile courts. While this criteria necessarily calls for evaluation and judgment by the juvenile court judge, it is not unconstitutionally vague; it is couched in language within common usage and is sufficiently clear to enable a person of ordinary intelligence to comprehend its import. The numerous conditions which must be satisfied before a juvenile transfer is appropriate manifest the legislative intent that non-criminal treatment of juveniles is to be favored. Furthermore, La.R.S. 13:1592 specifically articulates the general policy and purpose of the juvenile court system to insure a child’s welfare by providing him with care as nearly equivalent as possible to that he *1274 would receive in a home environment. These manifestations of legislative intent effectively limit and guide the juvenile court judge’s discretion. Juvenile court judges of this state must recognize, as did the United States Supreme Court in Kent, that the decision to transfer a child for trial as an adult is a critically important one accompanied by tremendous consequences. Accordingly, the decision that juvenile is not amenable to treatment or rehabilitation should be based on a careful review of relevant considerations such as the age, maturity and sophistication of the juvenile; the nature and seriousness of the offense charged; prior acts of delinquency, if any, and their nature and seriousness; past efforts at rehabilitation and treatment and the juvenile’s response thereto; whether the juvenile’s behavior might be related to physical or mental problems; and the techniques, programs, personnel and facilities available to the juvenile court system which might be competent to deal with the problems of the particular juvenile whose transfer is being considered. We do not mean to suggest that these are the only relevant considerations. The juvenile court judge must evaluate each case on its own merits. There are no specific standards mandated by either the state or federal constitutions. In Breed v. Jones, supra, the Supreme Court noted that, although certain procedural due process rights set forth in Kent must be afforded at a transfer hearing, . . . the Court has never attempted to prescribe criteria for, or the nature and quantum of evidence that must support, a decision to transfer a juvenile for trial in adult court.
“In the final analysis, whether or not a youth is amenable to treatment of rehabilitation is a matter within the sound discretion of the juvenile court judge who has the opportunity to hear the evidence and to observe the juvenile. The exercise of this discretion must, of course, be principled. It must reflect the policy in favor of non-criminal treatment of children under seventeen years of age and the types of considerations set forth hereinabove. Moreover, there is the additional safeguard that the juvenile court judge must state his reasons for judgment with sufficient particularity to insure meaningful review by this court. Thus, we are satisfied that an adequate guide exists for the limited discretion vested in the juvenile court judge by La.R.S. 13:1571.1A(4).”
This record does not satisfactorily establish that there are reasonable grounds to believe that the child is not amenable to treatment or rehabilitation through facilities available to the juvenile court. With respect to one of the principal considerations for determining transfer — the past efforts at rehabilitation and treatment and the juvenile’s response thereto — the evidence is sadly deficient. Only counseling and warning on a single occasion resulted from the first four offenses, which are admittedly minor. But their repetition indicated a pattern of lawlessness which demanded more attention. On the fifth offense, where relator was adjudged a delinquent on a guilty plea of aggravated battery and placed on a suspended commitment, the probation officer counseled with him about one-half hour monthly from late February to September 1977. Relator was not examined by a psychologist or other expert to determine whether his behavior might be related to physical or mental problems. And the record is silent concerning the techniques, programs, personnel and facilities available to the juvenile court system which might be competent to deal with the problems of this particular juvenile. Nor does the ruling of the juvenile judge state his reasons for judgment with sufficient particularity to insure meaningful review by this Court.
Here a sixteen-year-old is charged with crimes of armed robbery. If he is tried as a criminal and found guilty in the district court he will be exposed on each offense to a sentence at hard labor of not less than *1275 five years and not more than ninety-nine years, without benefit of parole, probation or suspension of sentence. Confinement under these sentences is in the state penitentiary with adult felons of every description. The dreadful prospect of incarcerating a juvenile with murderers, rapists and other felons is a matter of common knowledge. If he is adjudged a delinquent in the juvenile court his most serious punishment on all charges will be five years confinement in the Louisiana Training Institute, an institution for juveniles. Obviously, the difference is one of tremendous consequences requiring careful and meticulous attention to proper safeguards designed to implement the State policy of noncriminal treatment of children ' under seventeen years of age. The determination should explore every reasonable ground to assure the court that the juvenile cannot be treated or rehabilitated through facilities available to the juvenile court, and these matters must appear of record. Unless they do, the transfer cannot be approved.
For the reasons assigned, the case is remanded to the juvenile court for further hearings and reconsideration, not inconsistent with this decision.