PER CURIAM.*
By petition filed in the Orleans Parish Juvenile Court on March 22, 1979, sixteen year old Roger Johnson was charged with armed robbery, a violation of R.S. 14:64. Pursuant to the provisions of R.S. 13:1571.-1(D) the state, on July 27, 1979, filed a motion to transfer proceedings in this matter to the Orleans Parish Criminal District Court. A hearing on the state petition was *958 held on September 12, 1979, following which the trial court denied the state’s motion. The state now assigns this ruling as error and appears in this Court by virtue of a grant of supervisory writs. La.Const. Art. 5, § 5(A).
In denying the state’s transfer request, the trial court foúnd that the state had in fact sufficiently established the prerequisites to transfer stated in R.S. 13:1571.1:
(1) Roger Johnson had attained the age of fifteen at the time of the alleged conduct.
(2) All parties concerned, including the juvenile, his mother, his grandmother, and his attorney had been given notice in writing of the time, place, and purpose of the hearing at least ten days before the hearing.
(3) There was probable cause to believe that Roger Johnson had committed the armed robbery.
The trial court noted that the 1978 amendment (Act 460 of 1978) to Louisiana’s juvenile transfer statute eliminated the requirement that the state demonstrate the juvenile’s non-amenability to treatment through facilities available to the juvenile court as a prerequisite to transfer. Finding that deletion of the non-amenability clause (which had been in the juvenile transfer statute prior to amendment by Act 460 of 1978, at R.S. 13:1571.1A(4)) left the transfer statute in Louisiana without standards, the trial judge applied the criteria for juvenile transfer stated in the opinion of the United States Supreme Court in Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966).[1] In that connection he found that the state had not shown the existence and/or failure of efforts to rehabilitate this juvenile. Although determination of the juvenile’s non-amenability to rehabilitation was not a statutory prerequisite to transfer at the time the trial judge ruled, the court felt that absence of attempt to rehabilitate the juvenile was an important factor to consider in making his decision. The court found that the state had not met its burden of proof, primarily because of this absence of rehabilitative efforts.
We granted this writ because the trial judge’s use of the Kent guidelines obviously went beyond the three statutory prerequisites to transfer of R.S. 13:1571.1 as amended by Act 460 of 1978. However, after granting the writ we have held in State v. Hunter, 382 So.2d 1003 (La.1980), that Act No. 460 of 1978 which amended and reenacted R.S. 13:1571.1 is unconstitutional. In Hunter, supra, we further held that passage of this unconstitutional act (Act 460 of 1978) did not effect repeal of the former statute. Therefore the juvenile transfer proceedings in this case (as those in Hunter) are governed by the provisions of R.S. 13:1571.1 as it existed prior to the passage of Act No. 460 of 1978.
*959 Earlier, in State v. Everfield, 342 So.2d 648 (La.1977) we held that Louisiana’s juvenile transfer statute does not contravene the due process guidelines contained in Kent and in some instances goes beyond those requirements in protecting juvenile’s rights. We stated in Everfield, 342 So.2d at 655, 656, that in considering whether a child is amenable to treatment or rehabilitation, and thus whether the case should be transferred to the Criminal Courts, a court should review the following factors:
“age, maturity and sophistication of the juvenile; the nature and seriousness of the offense charged; prior acts of delinquency, if any, and their nature and seriousness; past efforts at rehabilitation and treatment and the juvenile’s response thereto; whether the juvenile’s behavior might be related to physical or mental problems; and the techniques, programs, personnel and facilities available to the juvenile court system which might be competent to deal with the problems of the particular juvenile whose transfer is being considered.”
The trial court’s consideration of guidelines contained in Kent and Everfield complied with R.S. 13:1571.1 (prior to the 1978 amendment) and ordinarily his ruling would not be disturbed absent a finding that the trial judge abused his discretion. However, in this case prior to the trial judge’s ruling, the state was prevented from presenting evidence of defendant’s non-amenability to treatment or rehabilitation by R.S. 13:1571.4A which stated in pertinent part:
“Only such evidence may be introduced at a transfer hearing which pertains to the transfer criteria stated in R.S. 13:1571.1 .” At the time of trial Act 460 of 1978 amending and reenacting R.S. 13:1571.1 (which had not yet been declared unconstitutional and therefore was presumptively valid, See Everfield, supra) stated that only three criteria were to be considered in a transfer proceeding; the age of the juvenile, proper notice of the transfer hearing, and that probable cause exists that a juvenile committed the enumerated crime charged.
Now, however, in light of our decision in Hunter, supra, the former R.S. 13:1571.1 is the applicable statute and it is proper for the state to be given the opportunity to present evidence showing that efforts were made to rehabilitate this juvenile and that those efforts were unsuccessful because the juvenile is not amenable to such treatment. Accordingly, we remand this case to allow the state to attempt to introduce evidence of defendant’s non-amenability to treatment or rehabilitation.

Decree

Judgment of the trial court is set aside and the case is remanded for further proceedings in accordance with the views expressed in this opinion.
JUDGMENT SET ASIDE; CASE REMANDED.

 Chief Judge PAUL B. LANDRY, retired, participated in this decision as an Associate Justice Ad Hoc.

. The juvenile transfer guidelines contained in Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966) are as follows:
“1. The seriousness of the alleged offense to the community and whether the protection of the community requires waiver.
“2. Whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner.
“3. Whether the alleged offense was against persons or against property, greater weight being given to offenses against persons especially if personal injury resulted.
“4. The prosecutive merit of the complaint, i. e., whether there is evidence to return an indictment (to be determined by consultation with the United States Attorney).
“5. The desirability of trial and disposition of the entire offense in one court when the juvenile’s associates in the alleged offense are adults who will be charged with a crime in the U.S. District Court for the District of Columbia.
“6. The sophistication and maturity of the juvenile as determined by consideration of his home, environmental situation, emotional attitude and pattern of living.
“7. The record and previous history of the juvenile, including previous contacts with the Youth Aid Division, other law enforcement agencies, juvenile courts and other jurisdictions, prior periods of probation to this Court, or prior commitments to juvenile institutions.
“8. The prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the juvenile (if he is found to have committed the alleged offense) by the use of procedures, services and facilities currently available to the Juvenile Court.”