387 So.2d 1086 (1980)
STATE of Louisiana in the Interest of Erin A. HUNTER.
No. 65512.
Supreme Court of Louisiana.
March 3, 1980.
For Dissenting Opinion October 28, 1980.
*1087 Mark S. McTernan, New Orleans, New Orleans Legal Assistance Program for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Joseph DePaoli, Louise S. Korns, Asst. Dist. Attys., for plaintiff-respondent.
For Dissenting Opinion October 28, 1980. See 389 So.2d 390.
DENNIS, Justice.
The issue presented by this case is whether a juvenile transfer statute may constitutionally authorize a juvenile court judge to transfer to adult court any fifteen year old whom there is probable cause to believe has committed a major violent felony without statutorily prescribing definite standards to govern the judge's determination. We conclude that the absence of any standards sufficient for these purposes renders the transfer act under review in this case unconstitutional. A law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves judges free to decide, without legally fixed criteria, when an individual must suffer the imposition of burdens or forfeiture of rights. A statute fails to fulfill the mandate of the state constitution if it permits a juvenile to be excepted from the general rule of non-criminal treatment without requiring that prescribed standards be applied to each case on its individual merits.
Relator, Erin A. Hunter, a fifteen year old juvenile, in a petition filed in juvenile court was alleged to be a delinquent child because he had committed armed robbery. The state moved to transfer the child for prosecution to the adult criminal court. Relator made timely objections to the validity of the statute authorizing such transfers on several grounds[1] including an objection that the statute is unconstitutionally vague in violation of the Fourteenth Amendment's Due Process Clause and the Louisiana Constitution because it authorizes juvenile judges to transfer juveniles to adult criminal courts, without prescribing definite standards to govern the judge's determination or to require that he apply the standards to each individual case on its own merits. The juvenile court judge overruled the juvenile's objections. We granted certiorari to consider the constitutional issues raised.
The juvenile transfer statute, as amended in 1978, provides that a juvenile charged with delinquency based on criminal conduct, who was fifteen years of age at the time of the alleged offense, may be transferred to adult court by the juvenile judge, after notice and a hearing as provided by law, if the judge finds that there is probable cause to believe the child committed murder (first or second degree), manslaughter, rape, armed robbery, aggravated burglary, or aggravated kidnapping. The statute no longer contains any standards that the juvenile judge must apply to individual cases to determine which fifteen year olds accused of the designated crimes should be transferred or which ones should remain in the juvenile court system. The former transfer law, which required the judge to find "reasonable grounds to believe that the child is not amenable to treatment or rehabilitation through facilities available to the juvenile *1088 court," was amended in 1978 to delete this criterion.

1.
The juvenile transfer statute fails to meet the requirements of due process because of vagueness caused by its failure to set forth standards to enable juveniles to protect themselves against arbitrary and discriminatory forfeiture of the special rights and immunities of juvenile court jurisdiction. Since proceedings to waive juvenile jurisdiction must measure up to the essentials of due process and fair treatment, the relator cannot be transferred to adult court pursuant to the present statute, which is void for vagueness.
Because it is implicit in the juvenile court scheme that non-criminal treatment is to be the rule, see State v. Everfield, 342 So.2d 648 (La.1977), and that adult criminal treatment is the exception which must be governed by the particular factors of individual cases, the waiver of jurisdiction is a critically important action determining vitally important statutory rights of the juvenile which may be taken only after a hearing that measures up to the essentials of due process and fair treatment. Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966); see also In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); United States ex rel. Turner v. Rundle, 438 F.2d 839 (3d Cir. 1971); State v. Everfield, supra.
A law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits or leave judges and jurors free to decide, without any legally fixed standards, whether to impose burdens or forfeiture of rights. Giaccio v. Pennsylvania, 382 U.S. 399, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966).[2] Accordingly, a statute is "void for vagueness" either where there has been a delegation of legislative authority with standards which are not sufficient to bar arbitrary or discriminatory action or where the statute is so unclear in what it permits or forbids that a person cannot know what the law expects of him. See Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); In re Juvenile, 364 Mass. 531, 306 N.E.2d 822 (1974).
The juvenile transfer act, since its amendment in 1978 deleting the criterion for determining waiver of juvenile jurisdiction, is void for vagueness because it leaves juvenile court judges free to cause forfeiture of important rights without any legally fixed standards and provides juvenile accuseds no protection against arbitrary or discriminatory action. The juvenile court's original and exclusive jurisdiction confers on the child special rights and immunities. He is shielded from publicity. He may be detained, but with rare exceptions he may not be jailed with adults. He may be confined, but only until he is twenty-one years of age. The court is admonished by statute to give preference to retaining the child in custody of his parents unless his welfare and the safety of the public cannot be adequately safeguarded without removal. The child is protected against consequences of adult conviction such as the loss of civil rights, the use of adjudication against him in subsequent proceedings, and the stigma of a permanent criminal record. See Code of Juvenile Procedure arts. 2, 69, 89 and 125. Cf. State v. Everfield, supra; In re Dino, 359 So.2d 586 (La.1978), Note, A Cautious Step Forward, 39 La.L.Rev. 278 (1978). A waiver of juvenile jurisdiction results in the child's loss of these benefits. Considering that in relator's case a waiver also determines whether, potentially, he may be confined as a juvenile for approximately five years or incarcerated at hard labor without benefit of parole for ninety-nine years as an adult offender, the relator will unquestionably be penalized or suffer a forfeiture by a transfer to adult criminal *1089 court. Accordingly, we conclude that a juvenile faced with the prospect of transfer to adult court for criminal prosecution is entitled to protection against vague or insufficient waiver standards as one of the "essentials of due process and fair treatment," see Kent v. United States, supra, and that the juvenile transfer statute as presently written fails to measure up to the requirements of the Due Process Clause.
The state contends that the Code of Juvenile Procedure articles stating general purposes and general disposition policy, if read in pari materia with the transfer statute, provide sufficient legal standards for governing the determination of jurisdictional waiver. Essentially, these articles provide that non-criminal treatment of a juvenile is to be favored and call for the least restrictive disposition which the court finds will be conducive to his welfare and the best interests of the state. Code of Juvenile Procedure articles 2, 86. Several courts have concluded that similar standards were sufficiently definite to bar arbitrary and discriminatory action. Clemons v. State, 162 Ind.App. 50, 317 N.E.2d 859 (1974); State in the Interest of Salas, 520 P.2d 874 (Utah 1974); Donald L. v. Superior Court, 7 Cal.3d 592, 102 Cal.Rptr. 850, 498 P.2d 1098 (1972); State v. Halverson, 192 N.W.2d 765 (Iowa 1971); State v. Williams, 473 S.W.2d 382 (Mo.1971); Lewis v. State, 86 Nev. 889, 478 P.2d 168 (1970). We do not reach or decide whether such criteria meet the requirements of due process by enabling juveniles to be protected from arbitrariness and discrimination. The juvenile transfer statute itself contains no such statement of purpose or policy. Instead, the act specifically provides that no evidence may be introduced at a transfer hearing unless it pertains to the criteria stated in the transfer statute. La. R.S. 13:1571.4. Since the juvenile's non-amenability to rehabilitation was deleted from the criteria in 1978, it is clear that a juvenile judge is prohibited from considering evidence pertaining to whether a juvenile could benefit from juvenile court treatment and programs. Accordingly, we are foreclosed from finding implicit in the statute an intention that the general purposes of the Code of Juvenile Procedure or other policy statements may be applied as standards governing waiver of juvenile jurisdiction. If evidence cannot be taken and considered relative to such standards in individual cases, such standards would be meaningless and provide no protection against arbitrary or discriminatory transfers.[3]

2.
The legislature, in amending and reenacting the juvenile transfer statute, exceeded the bounds of its limited state constitutional authority to establish a procedure by which a juvenile court "may waive such special juvenile procedures in order that adult procedures would apply in individual cases." La.Const. of 1974, art. 5, § 19. The words, structure and convention history of the constitutional provision granting this authority reflect that the legislature's power to create a waiver device is limited to its authority to establish procedures for the judicial application of relevant standards to individual cases in determining which juveniles are unsuited to the juvenile court system. The constitution does not empower the legislature to institute a statutory vehicle for transferring juveniles to the adult court system by category or without reference to standards relevant to the purposes of the juvenile court system.
The wording of Article 5, § 19 of the 1974 Louisiana Constitution only authorizes a process for the transfer of juveniles to adult court in "individual cases." It is evident that the constitution does not permit the legislature to authorize a transfer of juveniles by category, such as, for example, according to the type of crime with which they have been accused.
The structure of Article 5, § 19 also indicates that the legislature is authorized to create a transfer procedure which permits *1090 waiver of juvenile jurisdiction as to individual children for reasons pertinent to the objectives of the juvenile court system, and not a procedure which allows transfer by classification or without regard to relevant standards. Under the constitutional section, two classes of persons alleged to have committed crimes prior to their seventeenth birthdays are established, (1) those fifteen years old or older who are alleged to have committed a capital offense or attempted aggravated rape, and (2) all other accused of a crime committed before their seventeenth birthday. Members of the first group are excepted from non-criminal treatment in the constitution itself by category. Members of the second group may be removed from the juvenile system by the judicial decision, according to a transfer procedure established by two-thirds vote of each legislative house, to apply to individual cases. Had it been the intention to authorize transfer by act of the legislature, without regard to factors peculiar to individual cases, there would have been no need to provide for judicial transfer to establish a transfer procedure, or to restrict its application to individual cases.
The convention debates confirm our interpretation of Article 5, § 19 as reflecting a concern for the individualized treatment of juveniles, and a design to safeguard them against arbitrary and discriminatory action. Delegate Derbes, an author of the amendment which became the final version of the section, stated:
"The flexibility . . . that this particular act provides is quite clear. The legislature may establish a procedure by which the juvenile court would decide on a case by case basis, whether a person should be tried under adult procedures or juvenile procedures. If the person is a recidivist, if the person has committed a particularly heinous crime, or even for particular categories of crimes, the legislature may authorize waiver, but the waiver must be by the juvenile court, based on the totality of circumstances." [emphasis supplied] Louisiana Constitutional Convention of 1973 Verbatim Transcript, Vol. IX, 118th day, January 15, 1974, at 3375.
Accordingly, while the legislature may enact or modify the procedures and standards for transfer of juveniles to adult court, it may not adopt a procedure without standards or one which invites a court to transfer juveniles without regard to the individual merits of each case.

3.
Since the constitutional deficiency of the present juvenile transfer procedure consists of its failure to prescribe definite standards to govern the judge's determination in individual cases, the statute may not be preserved by severing an invalid provision or item. Accordingly, Act. No. 460 of 1978, which amended and reenacted La.R.S. 13:1571.1, is declared unconstitutional.
An unconstitutional statute which purports to repeal a prior statute by specific provision is ineffective to do so where, under standard rules governing separability a hiatus in the law would result from the impossibility of substituting the invalid affirmative provisions for the legislation that was repealed. See Norton v. Shelby County, 118 U.S. 425, 6 S.Ct. 1121, 30 L.Ed. 178 (1886); Stewart v. Waller, 404 F.Supp. 206 (N.D.Miss.1975); State v. Steely, 600 P.2d 367 (Okl.Cr.App.1979); State ex rel. Boyd v. Green, 355 So.2d 789 (Fla.1978); State v. Dixon, 530 S.W.2d 73 (Tenn.1975); Vennekolt v. Lutey, 96 Mont. 72, 28 P.2d 452 (1939); State v. Cameron, 342 Mo. 830, 117 S.W.2d 1078 (1938); Sands, Sutherland, Statutory Construction, §§ 2.07 and 23.24 (1972). Thus, Act No. 460 of 1978, which purported to repeal all former versions of La.R.S. 13:1571.1 by amending and reenacting the statute in a manner violative of due process and state constitutional requirements, is ineffective to repeal the former juvenile transfer statute and leave a hiatus in the law. Accordingly, the juvenile transfer proceedings in this case shall be governed by the provisions of La.R.S. 13:1571.1 as it existed prior to the passage of Act No. 460 of 1978.

Conclusion
The juvenile court judge's decision overruling relator's objections to the validity of *1091 Act No. 460 of 1978 is reversed, and the case is remanded for further proceedings under the juvenile transfer statute in existence prior to the ineffective repealing act.
REVERSED AND REMANDED.
SUMMERS, C. J., dissents.
BLANCHE, J., dissents and will hand down reasons.
NOTES
[1] Other objections were that the statute violates the Equal Protection Clause of the Fourteenth Amendment and the Louisiana Constitution and the separation of powers article of the latter. We do not reach or decide these questions.
[2] As the Supreme Court remarked in declaring void for vagueness a Pennsylvania statute which authorized a jury, without fixing any legal standards, to decide whether to impose criminal court costs in an acquitted defendant, a state statute which deprives one of liberty or property "whether labeled `penal' or not must meet the challenge that it is unconstitutionally vague." Giaccio v. Pennsylvania, 382 U.S. at 402, 86 S.Ct. at 520.
[3] In the absence of a requirement that the juvenile court judge apply any definitive standards in making the decision to transfer, we cannot suggest considerations relevant to application of the standards as we did prior to their deletion from the statute. See State v. Everfield, supra, at n. 9.